[Civ. No. 1910.   Fourth Appellate District.—October 16, 1936.]

MONTGOMERY WARD & CO. (a Corporation), Appellant, v. W. O. WELCH, Tax Collector, etc., et al., Respondents.

Tanner, Odell & Taft and S. W. Odell for Appellant.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondents.

BARNARD, P. J.—This is an action for declaratory relief, the plaintiff praying that a tax levied in the sum of $4,351.26 be canceled as having been arbitrarily made, that the true amount of the tax which should have been levied on the property in question should be fixed by the court at $1173.46 ''or such other sum as may be the true and correct assessment for said year'', and that upon payment into court of the amount so found the tax be adjudged to have been satisfied.

The complaint alleges that on the first Monday in March, 1931, the plaintiff had taxable property in a certain warehouse in Los Angeles of the full cash value of $41,612.15; that in accordance with the provisions of section 3629 of the Political Code the plaintiff, on June 29, 1931, furnished to the assessor a statement of its unsecured personal property for the year 1931; that the assessor did not personally view or appraise the personal property in question but notwithstanding the filing of the said statement arbitrarily assessed the said property at a valuation of $154,300 and arbitrarily levied a tax thereon of $4,351.26; that on July 15, 1931, the assessor mailed a notice of assessment to the plaintiff at its office in Chicago; that the plaintiff did not receive said notice until after the board of supervisors sitting as a board of equalization had adjourned; that plaintiff had no opportunity to make a protest to the board of

equalization and to seek a modification of the assessment; that the plaintiff offered to pay to the tax collector the sum of $1173.46 and has ever since been ready and willing to pay this amount; and that on February 17, 1932, the plaintiff filed a petition with the board of supervisors asking said board to correct said assessment and to authorize the payment of $1173.46 in full for said taxes, which petition was denied.

An answer and cross-complaint was filed by the defendants. Among other things, it was alleged that the plaintiff vacated this warehouse on or about April 30, 1931, and removed the taxable property in question to other locations in various cities and towns in the same county; that the full cash value of the property on the first Monday in March, 1931, was $154,300; that the assessor duly assessed said property to the plaintiff at the value of $154,300 and levied taxes thereon in the sum of $4,351.26; that no real property was or is assessed to or owned by the defendant as security for the payment of said taxes; that the true and lawful amount of the tax and the amount which was actually levied is $4,351.26; that the plaintiff made no application to the board of equalization for a reduction in the valuation placed upon the property by the assessor; and that the plaintiff did not take any steps provided by law for the purpose of securing a reduction in the assessment. In answering the cross-complaint the plaintiff alleged that it had removed the property from the warehouse before April 1, 1931, that there was no property in the warehouse at the time the assessment was actually made, that the assessor did not, either in person or by deputy, enter the warehouse on the first Monday in March, 1931, or between that date and April 1, 1931, when all of the property had been removed, and that the assessor had arbitrarily assumed that the warehouse contained approximately the same quantity of goods that had been therein on the first Monday of March, 1930.

Each party filed a motion for judgment on the pleadings, the plaintiff's motion being denied and the defendants' motion granted. The plaintiff has appealed from the order denying its motion for judgment on the pleadings and also from the judgment entered after granting the defendants' motion. The order denying the plaintiff's

motion for judgment on the pleadings is not appealable and that appeal should be dismissed. (Code Civ. Proc., sec. 963; *Holton* v. *Noble,* 83 Cal. 7 [23 Pac. 58].)

It is appellant's contention that the assessor did not view the property, that he had no information concerning it except the statement furnished him by the appellant, that the assessment was arbitrarily made, and that, under the circumstances, the statement of the amount and value of the goods furnished by the appellant must be taken as conclusive. In its answer to the cross-complaint the appellant admits that it removed the property before April 1, 1931, and within the time in which the assessor could legally view and assess the same. We have been pointed to no statute requiring the assessor to view property before he can assess it nor to any case holding to this effect. Ordinarily an assessment is not invalidated by the fact that the assessor did not actually inspect the property if, from other sources, he had sufficient knowledge or evidence of its existence and value. (See 61 Cor. Jur. 629, and cases there cited.) It is to be presumed that a public official does his duty. No facts are pleaded by the appellant to show that the assessor did not have sufficient information to make the assessment in this instance, and it is not even pleaded that the property in the warehouse was not the same or approximately the same as that found there when the assessment for the previous year was made.

The complaint alleged that the full cash value of the property in question was $41,612.15, whereas it was assessed at $154,300, and the appellant relies on such cases as *Birch* v. *County of Orange,* 186 Cal. 736 [200 Pac. 647], in which it has been held that a grossly inequitable and palpably excessive overvaluation of property for taxation may be held constructively fraudulent. It is admitted that no application for a reduction in the assessment was made to the board of supervisors sitting as a board of equalization. If this was necessary the allegation that the appellant did not receive the notice of assessment in time to enable it to make a protest before the board of equalization is not sufficient to excuse the failure to make such an application. No personal service of such a notice is required by the statute and it is the taxpayer's duty to keep himself informed as to his assessments. The main ques-

tion here presented is whether such an action as this may be maintained where the question of overvaluation of the property has not been first presented before the board of equalization.

With respect to the remedy available to a taxpayer there is an obvious distinction between a mere overvaluation of property in an assessment and a double, erroneous or illegal assessment. (*Brenner* v. *Los Angeles*, 160 Cal. 72 [116 Pac. 397]; *Associated Oil Co.* v. *County of Orange*, 4 Cal. App. (2d) 5 [40 Pac. (2d) 887].) In the case of an erroneous or illegal assessment the board of supervisors may refund the amount paid under protest or cancel the entire assessment under the provisions of section 3804 or section 3804a of the Political Code. Those sections are available, where the property is assessed "more than once, or erroneously or illegally", in the absence of any previous application to or showing before the board of equalization (*Rittersbacher* v. *Board of Supervisors*, 220 Cal. 535 [32 Pac. (2d) 135]), but they are available only where the assessment is absolutely void. (*Graciosa Oil Co.* v. *Santa Barbara*, 155 Cal. 140 [99 Pac. 483, 20 L. R. A. (N. S.) 211].) On the other hand, in cases of mere overvaluation of property, relief is to be obtained by making timely objection before the board of supervisors sitting as a board of equalization. (*Associated Oil Co.* v. *County of Orange*, *supra; Southern Calif. Hdwe. etc. Co.* v. *Los Angeles County*, 49 Cal. App. 712 [194 Pac. 62]; *Globe G. & M. Co.* v. *Los Angeles County*, 62 Cal. App. 297 [216 Pac. 631].)

The appellant relies on such cases as *Birch* v. *County of Orange*, *supra*, where the overvaluation of certain property was held to have been so inequitable as to constitute a constructive fraud and to invalidate the assessment. However, in that case all of the material facts had been presented before the board of equalization, which had refused relief. In *Wores* v. *Imperial Irr. Dist.*, 193 Cal. 609 [227 Pac. 181], in discussing the powers of the board of equalization and the power of the courts in reviewing the decisions of that board, the court said:

"In the case of *La Grange etc. Co.* v. *Carter*, 142 Cal. 560, 565 [76 Pac. 241], this court declared the general rule applicable to the powers and duties of boards of equaliza-

tion to be that, 'A board of equalization of a county possesses great powers under our Constitution and statutes as to raising or lowering assessments. It seems, in the absence of fraud or malicious abuse of its powers, to be the sole judge of questions of fact and of the values of property. Such powers should be used with caution, after investigation, and with the sole purpose of doing equal and exact justice to each and every taxpayer, whether rich or poor, corporation or private citizen. To it the taxpayer can go for relief when assessed for more than his property is worth. To it the taxpayer may go when through fraud, favoritism, or ignorance of values some taxpayer is about to escape his just burden of taxation. We must presume in all cases that as a public official body it has performed its duty.'

"In the case of *Los Angeles Gas & Electric Co.* v. *County of Los Angeles,* 162 Cal. 164 [121 Pac. 384, 9 A. L. R. 1277], this court approved the foregoing rule and amplified it by the statement that 'It is not disputed that the conclusion of assessing officers as to the value of property for purposes of taxation, when honestly arrived at and when not made in pursuance of some fixed rule or general system the result of which is necessarily discriminatory and inequitable, is conclusive on the courts, however erroneous the conclusion of those officers may be. The law necessarily leaves the determination of the question of fact of value to certain officers, and when it appoints tribunals for that purpose, as in this state primarily the assessor, and, for purpose of review, the board of supervisors acting as a county board of equalization, the conclusion of those tribunals on such a question of fact constitutes a judgment that is not collaterally assailable in the courts. This is the universal rule, and it has been so held in this state. (*San Jose Gas Co.* v. *January,* 57 Cal. 614; *Henne* v. *Los Angeles County,* 129 Cal. 297 [61 Pac. 1081]; see, also, Gray on Limitations of Taxing Power, sec. 1460, 31 C. C. A. 537.)' The court in that case, however, proceeded to say: 'But it is likewise universally held that a taxpayer may so assail an assessment in the courts where it was "fraudulently and corruptly made with the intention of discriminating against him, and for the purpose of causing him to pay more than his share of the public

taxes'', and where it has that effect, or where there is something equivalent to fraud in the making of the assessment, producing such effect.' In the case of *Southern Pac. Co.* v. *San Diego County,* 183 Cal. 543 [191 Pac. 931], this court approved both the general rule and the exception to it as enunciated in the case last above cited, but held that where it was shown to a board of equalization by evidence, without substantial contradiction or conflict, that certain property was assessed at nearly twice its real value, while other property similarly situated was assessed in pursuance of a 'systematic, wilful, and intentional scheme to so do, at not to exceed twenty-five per cent of its real value', and that the board of equalization, with full knowledge of the existence of these facts, refused to take any other action than to deny the injured taxpayer's application for relief, such a situation would present a case showing 'something equivalent to fraud' which would entitle the taxpayer to relief in the courts, regardless of the denial of his application by the board of equalization; and this entirely regardless of the motives of the members of the board. In the still more recent case of *Birch* v. *Orange County,* 186 Cal. 736 [200 Pac. 647], this court gave application to the same doctrine both in its general rule and in the exception holding that 'a grossly inequitable and palpably excessive overvaluation of property for taxation may be held constructively fraudulent,' and cited a long line of cases in support of this conclusion. In both of the cases last above cited, and in all of the authorities upon which the aforesaid conclusion rests, it was made to affirmatively appear that there was no basis in reason or in the facts educed before the board of equalization in each case or before the court for any differentiation between the property subjected to the alleged unjust assessment and other properties of the same class similarly situated for purposes of taxation, and that no reasonable justification could be found or offered for the inequality of the assessment.''

▪ The case before us is purely that of a claimed overvaluation of the property and is not one of a double, erroneous or illegal assessment which is entirely void. Assuming that the assessment of property at nearly four times its actual value may be so inequitable as to constitute a constructive fraud it does not follow that such an assess-

ment may be attacked at any time and in any place. It is essential to the performance of governmental functions that an orderly system of assessment and collection of taxes shall be maintained, and that the amounts of the assessments be fixed with certainty in a prescribed manner and at a definite time. Our system provides a method of reviewing the values fixed by the assessor and a tribunal to pass upon any claims of overvaluation. If that tribunal fails to properly discharge its duty the courts may intervene, but a different situation is presented where a taxpayer fails to avail himself of the machinery provided and fails to make timely application to and make proof of his contentions before the board of equalization. Under the statutes and the authorities above referred to we conclude that an application for relief to the board of equalization is a necessary prerequisite to the maintenance of such an action as this, and that the complaint filed by the appellant failed to state a cause of action.

The purported appeal from the order denying the appellant's motion for judgment on the pleadings is dismissed, and the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 7, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 14, 1936. Thompson, J., voted for a hearing.